IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Anton D. Hamilton, Jr., , | Case No. 1:06 CV 2317 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Richard Gansheimer, | |
| Respondent. | |

### BACKGROUND

*Pro se* Petitioner Anton Hamilton, Jr., a prisoner in state custody, filed a Petition for a Writ of Habeas Corpus in this Court (Doc. No. 1). This Court has jurisdiction under 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Petitioner is in custody and has alleged his detention violates the First, Sixth, Eighth and Fourteenth Amendments of the U.S. Constitution.

The case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). In her Report and Recommendation (Doc. No. 41), the Magistrate Judge recommended the Court deny the Petition, as well as Petitioner's Motions of Clarification (Doc. No. 33), for Reconsideration (Doc. No. 37) and to Add to the Petition (Doc. No. 39) ("Other Motions").

This action is before the Court on Petitioner's Objection to the Report and Recommendation (Doc. No. 42) in which he objects specifically, and exclusively, to the recommendation denying the Petition. In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings and adopts the denial of the Petition for a Writ of Habeas Corpus. The Court also adopts the denial of the Other Motions.

## DISCUSSION

### Facts and Procedural Background

This Court adopts the Magistrate's statement of the underlying facts (at pp. 2-3).

Petitioner was indicted in July 1999 for murder with a firearm specification. He was found guilty and sentenced to a term of fifteen years to life with an additional term of three years for the firearm specification. In April 2002, following Petitioner's appeal of his conviction, the appellate court reversed the conviction and remanded for a new trial. Petitioner's motions to vacate his sentence and a petition for writ of habeas corpus in the Ohio Supreme Court were denied. In February 2004, Petitioner was convicted of the same counts in his second trial and received the same sentence. Petitioner's motion for a new trial was denied. His conviction was affirmed by the appellate court. The Ohio Supreme Court denied Petitioner's request to appeal in that court. Petitioner filed a petition for writ of habeas corpus in the Ohio Supreme Court, which that court dismissed in July 2006. He filed this Petition on September 25, 2006.

### Petition for a Writ of Habeas Corpus

The Petition alleges three constitutional violations: (1) Petitioner was prejudiced by the trial court's reading of a *Howard* Charge to the jury; (2) he was prejudiced by admission of allegedly

2

perjured testimony; and (3) his conviction for murder with a firearm specification was against the manifest weight of evidence because the evidence consisted of allegedly perjured testimony without other support.

The Magistrate found (at p. 11) that Petitioner procedurally defaulted on each of these arguments by failing to raise them, as required, during state court proceedings. The Magistrate specifically found Petitioner raised the *Howard* Charge argument in the Ohio appeals court but failed to raise it in the Ohio Supreme Court. The Magistrate further found Petitioner never raised in state court the arguments concerning perjured testimony and verdict against the manifest weight of evidence.

Petitioner objects to each of these findings. He claims: (1) his appellate counsel informed him she would exhaust all issues "by appealing the decision of the Eleventh District Court of Appeals, up to Ohio Supreme Court, so that Petitioner would be able to file a federal Petition for Habeas Corpus, if necessary after that" (Objection at p. 2), and (2) he raised the argument concerning perjured testimony in his state Habeas Corpus proceeding with the Ohio Supreme Court, which he argues satisfies any procedural bar.

*Procedural Default*

The doctrine of procedural default prevents federal habeas courts from reviewing federal claims that the state courts declined to address because of a petitioner's failure to comply with state procedural requirements. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). "Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

3

The Sixth Circuit has adopted the following approach in determining whether a petitioner's grounds for relief are procedurally defaulted and thus beyond the federal habeas court's scope of review:

[W]e engage in a four-part inquiry, asking whether:

(1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief. Furthermore, a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion in the case clearly and expressly states that its judgment rests on a state procedural bar.

*Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (internal quotation marks omitted) (citations omitted).

Procedural default occurs when the last state court rendering a decision makes a "plain statement" basing its judgment on a procedural bar. *Harris v. Reed*, 489 U.S. 255 (1989). "The mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Bowling v. Parker*, 344 F.3d 487, 498 (2003) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)); *see also Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (holding that the last state court rendering a reasoned judgment must "clearly and expressly" state that its judgment rests on a procedural bar for the doctrine of procedural default to apply).

In cases where no state court has addressed the issue in a reasoned judgment but has merely denied relief in a summary fashion, the federal habeas court must determine whether the decision rested on "adequate and independent" state grounds. The Sixth Circuit has held that in such cases, the federal courts assume "that had the state court addressed [the] petitioner's . . . claim, it would not

have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

However, the federal habeas court does not need to engage in the four-step analysis described in *Morales* if a petitioner never raised the issue(s) on direct review. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989) (plurality opinion) ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."); *Wong*, 142 F.3d at 322; *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004). The claim is also procedurally defaulted if a petitioner fails to raise it before the state's highest court after raising it on the first level of appeals. "A claim raised in the state Court of Appeals but not in the state Supreme Court cannot be considered in federal habeas." *Morales v. Coyle*, 98 F. Supp. 2d 849, 862 (N.D. Ohio 2000) (citing *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)). The failure to raise the issue to the state's highest court results in a procedural bar against collateral challenge of the conviction on that issue in state court. Nor can the federal habeas court later address the issue. *See Leroy*, 757 F.2d at 100.

A petitioner may overcome procedural default by showing cause for the failure to comply with the state procedural rule and prejudice resulting from the alleged constitutional violation. *See Wong*, 142 F.3d at 319. In extraordinary cases, a petitioner may overcome the procedural bar by establishing that declining to hear his or her claim on the merits would lead to a miscarriage of justice:

> A habeas petitioner can overcome a procedural default by demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The "fundamental miscarriage of justice" gateway is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639,

5

91 L.Ed.2d 397 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*

*Williams*, 380 F.3d at 973.

The Court applies these legal standards to the three grounds for relief Petitioner identifies in his Petition and Objection.

### A. Grounds Raised in Petitioner's Second Direct Appeal in State Court

Petitioner raised his argument concerning the *Howard* Charge on his second direct appeal (Doc. No. 19, Ex. 39 at pp. 30-32) but did not raise it in his petition to the Ohio Supreme Court (Doc. 19, Ex. 42). Likewise, Petitioner argued his conviction was against the manifest weight of evidence in his second direct appeal (Doc. 19, Ex. 39 at pp. 21-27) but not in his petition to the Ohio Supreme Court (Doc. 19, Ex. 42). Because Petitioner failed to raise these grounds for relief with the state's highest court on direct review, he procedurally defaulted and cannot raise the claims here. *See Morales*, 98 F. Supp. 2d at 862; *Leroy*, 757 F.3d at 100.

In his Objection, Petitioner argues any default should be excused because he was prejudiced by the conduct of his appellate counsel. Petitioner cites a letter dated September 21, 2005 in which his appellate counsel informed Petitioner: "I would like to take your case to the Ohio Supreme Court in order to be sure that we exhaust all state remedies so that you can pursue a federal habeas corpus appeal if you so desire" (Doc. 37-2, at p. 1). In a separate letter counsel stated: "[W]e must attempt to get your case into the Ohio Supreme Court in order to exhaust all of your state remedies so that you can then pursue federal habeas corpus" (Doc. 37-2, at p. 2). Petitioner argues this "misrepresentation" that all his claims would be exhausted was "illegal," "unconstitutional and prejudicial to Petitioner" (Doc. No. 42 at p. 2). His argument fails.

6

First, ignorance, inadvertence or deliberate strategy of counsel that leads to procedural default of claims is not sufficient cause to excuse default. *See Coleman*, 501 U.S. at 752 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

Second, because Petitioner's direct appeal to the Ohio Supreme Court was a discretionary appeal and not an appeal of right, the constitutional right to effective assistance of counsel did not apply. *Coleman*, 501 U.S. at 752-53 (petitioner cannot claim ineffective assistance of counsel in discretionary appeals or post-conviction proceedings in which he or she had no constitutional right to counsel); *Smith v. State of Ohio Dep't of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006) ("There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment"). A petitioner may claim ineffective assistance of counsel when the attorney in the appeal of right does not notify the petitioner of the result of the appeal and the availability of a discretionary appeal in the state's highest court. *Id.* at 433-34. However, in this case, Petitioner's appellate counsel timely notified him of the possible appeal to the Ohio Supreme Court and timely filed the notice of appeal. Any deficiency occurred in counsel's argument before the Ohio Supreme Court, **not** during the lower court appeal. Therefore, Petitioner had no constitutional right to counsel at the time the alleged deficiency occurred and cannot claim ineffective assistance of counsel.

7

Finally, Petitioner argues this Court must hear the merits of his claims to avoid a fundamental miscarriage of justice. Because this argument relates to all three grounds for relief, it is considered separately below.

**B.     Ground Raised in State Habeas Petition**

Petitioner did not raise his second ground for relief (admission of allegedly perjured testimony) in his second direct appeal (Doc. 19, Ex. 39) or in his appeal to the Ohio Supreme Court (Doc. 19, Ex. 42). However, he raised the issue in his state habeas petition (Doc. 19, Ex. 45).

As discussed above, a habeas petitioner is procedurally barred from raising grounds for relief that he or she failed to raise on direct review. *Williams*, 380 F.3d at 967 (holding that failure to raise claims on direct review in Ohio courts barred the petitioner from raising the claim in his federal habeas petitioner because he procedurally defaulted under Ohio law). "Ohio has a rule that claims **must be raised on direct appeal** if possible; otherwise, res judicata bars their litigation in subsequent state proceedings." *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (emphasis added); *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967). Accordingly, a claim is procedurally defaulted if a petitioner raised it for the first time in his or her Ohio postconviction petition. This bar only applies if "the state courts actually enforced" it. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

The issue is whether the Ohio Supreme Court's summary denial of the petition for a writ of habeas corpus (Doc. 19, Ex. 46) "actually enforced" the procedural bar against raising this argument for the first time during postconviction relief. The procedural bar is waived if the state court nevertheless addresses the argument on the merits. *Durr*, 487 F.3d at 432-33. The Ohio Supreme Court did not address the merits in dismissing his petition in summary fashion. Because Petitioner did not raise his second ground for relief before his state habeas petition, no reasoned state court

8

opinion addressed this particular claim. Under *Simpson*, this Court assumes the Ohio Supreme Court would have enforced the procedural bar against Petitioner. And Petitioner has not alleged why this particular default should be excused. Therefore, Petitioner has procedurally defaulted on this ground for relief.

### C. Fundamental Miscarriage of Justice Analysis

Finally, Petitioner argues any procedural default should be excused because he is actually innocent (Objection at p. 3). To meet this standard, Petitioner must establish that this Court's "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A petitioner may prove that a miscarriage of justice would occur by demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Williams*, 380 F.3d at 973; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The Supreme Court has held:

> It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he [or she] persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Schlup*, 513 U.S. at 329.

"The *Schlup* standard is demanding and permits review only in the extraordinary case." *House v. Bell*, 126 S.Ct. 2064, 2077 (2006) (internal quotation marks omitted). The petitioner must present "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. The federal habeas court then must make "a probabilistic determination about what reasonable, properly instructed jurors would do. . . . The court's function is not to make an independent factual

9

determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 126 S.Ct. at 2077 (internal quotation marks omitted) (citations omitted).

In this case, Petitioner's Objection fails to specify the basis for his claim of actual innocence. However, because Petitioner is *pro se*, this Court construes his submissions liberally. Petitioner explained his two bases for this claim in his Petition and Supplemental Petition (Doc. Nos. 1 and 7) -- the lack of credibility of the state's key witnesses and an affidavit from a juror who felt pressured to render a guilty verdict after the trial judge gave the jury the *Howard* charge. This Court has examined this evidence along with other evidence in the trial record and has found no offer of new evidence that would establish a probability of actual innocence. Furthermore, the evidence -- both "new" and existing -- fails to establish that it is likely that no reasonable juror would convict Petitioner.

First, Petitioner offers affidavits and a report from a private investigator in an attempt to show that the testimony of Jonathan King and Jameson Jeffries was perjured and therefore an improper basis for his conviction. The affidavit of Thomas Peterson (Doc. No. 7, Ex. 2) is not relevant because, although it purports to undermine Jeffries' testimony, it addresses an issue that was not included in his trial testimony -- Petitioner's allegedly threatening conduct at a card game (*See* Doc. No. 29, Trial Tr. Vol. VII at pp. 1188-1255). Peterson's affidavit states that Petitioner did not threaten him or brandish a weapon at him during a card game, which Jeffries stated in his statement to police. However, Jeffries did not testify about any such threats at trial.

Next, Petitioner points to an investigative report by a private investigation service that recounts an interview in which Antonio Rimmer denies Jonathan King went to Rimmer's home on the night of the murder for which Petitioner was convicted (Doc. No. 7, Ex. 4). This statement contradicts the statement King made to police (Doc. No. 7, Ex. 2). However, Rimmer testified at trial

10

that King did not visit his home or drive around with Rimmer that evening (Doc. No. 30, Trial Tr. Vol. VIII, at pp. 1549-51). This evidence is not "new" and indeed was already before the court in Petitioner's trial. The jury was free to determine which witness was more credible. Neither of these submissions offers new evidence that was not before the jury that would make it more likely than not that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."

Second, Petitioner offers an affidavit dated February 13, 2004 from a juror, Martin Chick, at his second trial (Doc. No. 7 at p. 1). Chick testifies he maintained Petitioner's innocence throughout jury deliberations and still believes in his innocence. He also states "[t]hat due to the instruction, I felt that I had no choice but to agree to a verdict of Guilty." This statement provides no evidence that would affect the likelihood of a jury's determination of Petitioner's guilt. The affidavit relates to Petitioner's claim that the jury's verdict was influenced by an improper instruction. Petitioner has procedurally defaulted on this claim, as discussed above, and in any event, the juror's testimony provides this Court no evidence that might form the basis of a fundamental miscarriage of justice.

Petitioner fails to produce "new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 428 (6th Cir. 2003) (*quoting Schlup*, 513 U.S. at 324) (internal quotation marks omitted). Petitioner's submissions concerning King's and Jeffries' testimony is either irrelevant or merely questions the jury's credibility determinations, and the submission from the juror is not "reliable evidence" that actually relates to the facts of the case. Petitioner has not met the actual innocence standard because this is not "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Therefore, the Court cannot reach the merits of Petitioner's procedurally defaulted claims.

11

**CONCLUSION**

After conducting a *de novo* review of the portions of the Report and Recommendation objected to by Petitioner, the Magistrate's Report and Recommendation is hereby adopted. The Petition (Doc. No. 1) is dismissed.

For the reasons set forth above, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability. 28 U.S.C. § 2253; Federal Appellate Rule 22(b).

IT IS SO ORDERED.

                                                   s/ *Jack Zouhary*
                                                   JACK ZOUHARY
                                                   U. S. DISTRICT JUDGE

                                                 February 27, 2008